### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADENIKE GRAHAM and KIMBERLY MCNULTY, on behalf of themselves and all others similarly situated, | **CASE NO:**  19-cv-873 |
| Plaintiffs, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| NATIONAL BEVERAGE CORPORATION, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiffs Adenike Graham and Kimberly McNulty, on behalf of themselves and all others similarly situated, bring this class action against Defendant National Beverage Corporation for its LaCroix sparkling water, and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

### INTRODUCTION

1.      This is a class action brought by Plaintiffs on behalf of themselves and all other similarly situated consumers ("Class Members") who purchased LaCroix sparkling water for personal or household use and not for resale.

2.      Defendant National Beverage Corporation ("Defendant" or "National Beverage Corp.") is an American company that produces and markets a diverse portfolio of flavored beverage products that are sold throughout the United States. Notably, the company's brand is geared towards the active and health-conscious consumer. Among its many products, National Beverage Corp. manufactures, advertises, markets, distributes and sells LaCroix sparkling water (the "LaCroix Product") in various flavors.

3.      As alleged with specificity herein, through an extensive, uniform, nationwide advertising and marketing campaign, National Beverage Corp. has knowingly and intentionally misrepresented to consumers, including Plaintiffs and Class Members, the true nature and quality of the LaCroix Product by claiming that the product is "all natural" and "100% natural" when in fact it is not.

4.      In a recent report from the Center for Applied Isotope Studies at the University of Georgia, various flavors of the LaCroix Product were found to be comprised of between 36% and 98% synthetic ingredients.

5.      Plaintiffs and Class Members are consumers who were deceived and mislead by the "all natural" and "100% natural" advertising, marketing, packaging and labeling of the LaCroix Product, and induced into purchasing the LaCroix Product based on that all-natural promise. Had Plaintiffs and Class Members known the true nature and quality of the LaCroix Product, they would not have purchased the product, or they would not have purchased the product at prices that exceeded the product's true value.  Consequently, Plaintiffs and Class Members did not receive the benefit of their bargain.

6.      National Beverage Corp.'s false, misleading and deceptive conduct violates well-established contract, tort, and consumer protection laws of the State of New York, and Plaintiffs therefore bring this class action on behalf of themselves and Class Members to recover damages and equitable relief to the fullest extent allowable under applicable law.

## PARTIES

7.      Plaintiff Adenike Graham is a resident and citizen of New York living in Westchester County, New York.

8.      Plaintiff Kimberly McNulty is a resident and citizen of New York living in Bronx County, New York.

9.      Defendant National Beverage Corp. is a Delaware corporation with a principal place of business located at 8100 SW 10th Street, Suite 4000, Plantation, Florida 33324-3224. Defendant conducts business throughout the United States, including, but not limited to, marketing, advertising, distributing and selling the LaCroix Product in the State of New York.

## JURISDICTION AND VENUE

10.      This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the State of New York.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the State of New York, during the relevant time period, at which time Defendant was engaged in business activities in the State of New York.

11.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3

12.     Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendant conducts business in this District and has intentionally availed itself of the laws and markets within this District.

### FACTS COMMON TO ALL CLASS MEMBERS

**A.  Defendant's Deceptive and Unlawful Conduct Regarding LaCroix Sparkling Water**

**i.      Defendant's Role in The Multi-Billion-Dollar Sparkling Water Industry**

13.     Sparkling water sales in the United States have grown by more than $1.4 billion over the past five years, while soda sales in the United States have declined by more than $1.2 billion.[1]

14.     National Beverage Corp. is a significant player in the multi-billion-dollar sparkling water industry in the United States, and for years has described itself as "a highly innovative pacesetter in the changing soft drink industry," with a focus on health and wellness, representing that "[a]s consumer needs and preferences continue to evolve, we shall consistently focus on the science of beverages. . . making wonderful tasting liquids that address the health and wellness demands of all sectors of the American population. Never–wavering devotion to quality, safety and ultimate performance drive us to provide 'nothing but the very best' for our consumers, customers and fellow team members."[2]

15.     Since its start in 1986, "National Beverage Corp. has completed its transformation from that typical soda pop manufacturer of January 1986 to the master innovator of this healthier refreshment company!" With its extensive and successful marketing campaign, focused on outselling the soda industry with its marketing focus on "the joy, benefit and enjoyment of our

---

[1] http://ir.nationalbeverage.com/static-files/0ae4c8dd-3c2b-468c-baf3-13355fb9a4f5 (last visited January 21, 2019).
[2] https://www.nationalbeverage.com/mission-vision/ (last visited January 21, 2019).

consumers' healthier lifestyle," Defendants "will soon surpass Diet Coke and Diet Pepsi at the Grocery Channel."[3]

16.     National Beverage Corp. admits that its

> …strategy seeks the profitable growth of our products by (i) developing healthier beverages in response to the global shift in consumer buying habits and tailoring our beverage portfolio to the preferences of a diverse mix of 'crossover consumers' – a growing group desiring a healthier alternative to artificially sweetened and high-caloric beverages…[4]

### ii.     Defendant's Deceptive Advertising and Labeling of the LaCroix Products

17.     Defendant manufactures, advertises, markets, distributes and sells the LaCroix Products throughout the United States, including in New York.

18.     As alleged later in this Complaint, LaCroix Products are marketed as all-natural sparkling water products, and are sold at retail stores such as Amazon, Walmart, Target, Walgreens, and local grocery stores among others.

19.     Defendant's marketing scheme for the LaCroix Product as an all-natural, healthy alternative to soda and sugary drinks has captivated consumers and catapulted the product to the forefront of the sparkling water industry.

20.     In its 2018 Annual Report, National Beverage Corp. represents that:

> LaCroix is the ultimate game changer in the world of sparkling water. The Millennials have set the pace and GenZ is following their lead choosing LaCroix as their favorite craving. Viral marketing – by the consumers, for the consumers – is the most genuine form of advertising and distinguishes LaCroix from its impersonators.
>
> ***

---

[3] http://ir.nationalbeverage.com/static-files/0ae4c8dd-3c2b-468c-baf3-13355fb9a4f5 (last visited January 21, 2019).
[4] https://www.marketwatch.com/press-release/10-q-national-beverage-corp-2018-12-06 (last visited January 21, 2019).

> LaCroix – look at it again. La La, do you feel it, sense it? It
> lures you into being refreshed by just thinking of the name .
> . . LaCroix. That name has inspired a cult and has created an
> awareness that leaves each and every consumer with that
> special feeling of . . . the Joy of LaCroix. It became the
> symbol of authenticity, healthy hydration and the smart way
> to live. Divine destiny defined our efforts. Intrigued by the
> name and vision of what could be, and helped through the
> use of masterful techniques that included the use of colors
> and reflections of sensorial caring, we created the stimulant
> that the cult embraced. Today, it is the symbol of the way to
> be, the way to live and what we want for those who we
> genuinely care for. It is our LaCroix now. [5]

21.    As one of the largest purveyors of sparkling water products, Defendant knows that,
when it comes to labeling and marketing, words matter.  Defendant chose to label the LaCroix
Products as all-natural to impact consumer choices.  Defendant knew that the LaCroix Product
labels would cause consumers to respond in a certain way, and developed its misrepresentations
to achieve that result.

22.    Since National Beverage Corp. acquired the LaCroix Products in or about 1992,
Defendant has consistently conveyed the uniform, deceptive message to consumers that the
LaCroix Products are all natural, and contain only carbonated water and natural flavors, when they
do not.

23.    These deceptive claims have been made and repeated across a variety of media
including Defendant's product labels, websites and online promotional materials, and at the point-
of-purchase, where they cannot be missed by consumers.  In truth, Defendant's natural claims are
false, misleading and deceptive because the LaCroix Products are not all natural and, in fact,
contain between 36% and 98% synthetic ingredients.

---

[5] *Id.* (last visited January 21, 2019).

24.     Defendant's false, misleading and deceptive marketing campaign is on the front and center of every box and can.

25.     On each LaCroix can, Defendant represents LaCroix as "natural" "sparkling water" with "no artificial sweeteners," and list its ingredients as only "carbonated water" and "natural flavor," as shown below. On some of its labels, Defendant even claims these "natural" ingredients are "innocent!"















**INGREDIENTS:** **ONLY** CARBONATED WATER.

26. Likewise, on each LaCroix box, Defendant represents LaCroix as being all natural:











27. On its website, Defendant states the following regarding this natural flavor:

**What ingredients make up the 'Natural Flavors' in the LaCroix flavors?**

The flavors are derived from the natural essence oils extracted from the named fruit used in each of our LaCroix flavors. There are no sugars or artificial ingredients contained in, nor added to, these extracted flavors.[6]

\*\*\*

**What's meant by 'all natural flavors'?**

All natural flavors are essences or oils derived from the named fruit, i.e., lime / lime oils. There is nothing artificial in LaCroix – enjoy![7]

\*\*\*

**Sweeteners in LaCroix Water**

We do not add any artificial sweeteners, sugars or sodium to our waters.[8]

---

[6] https://www.lacroixwater.com/nutritional-faqs/ (last visited January 21, 2019).
[7] https://www.lacroixwater.com/flavors/ (last visited January 21, 2019).
[8] https://www.lacroixwater.com/nutritional-faqs/ (last visited January 21, 2019).

28.     Defendant further represents the LaCroix Product as a 100% natural, healthy beverage choice in order to convince consumers that they should purchase LaCroix rather than sugary or sweetened beverages:

> **LaCroix Sparkling Water is a Healthy Beverage Choice**
> *100% Natural Sparkling Water
> *Calorie-Free
> *Sugar Free
> *Sodium Free
> *No Artificial Sweeteners[9]

**B.     The LaCroix Products Are Not All Natural.**

22.     Many ingredients contained in consumer products today may be natural and synthetic substances. For instance, naturally derived caffeine from green tea extract rather than synthetic is a popular trend in consumer products looking for the more health-driven consumer. All though these two substances are chemically identical, sophisticated testing has been developed to distinguish between the two.

23.     The Center for Applied Isotope Studies (CAIS) at the University of Georgia is at the forefront of the scientific community in applying analytic measurements to determine whether food ingredients are "synthetic" or "natural."

24.     CAIS uses compound specific stable isotope analysis ("CSIA") and gas chromatography isotope ratio mass spectrometry ("GC/IRMS") to generate multi-component, multi-element data for the enhanced characterization of organic chemical processes and source validation.[10]

---

[9] https://www.lacroixwater.com/blog/beat-sugar-by-drinking-bubbly-lacroix-sparkling-water/ (last visited January 21, 2019).
[10] https://cais.uga.edu/analysis_natural_products.html (last visited January 18, 2019).

14

25.     CAIS used these methods to determine whether the LaCroix Products contain synthetic ingredients.

26.     It was determined by CAIS that the LaCroix Products contain synthetic ingredients ranging from 36% to 98%.

### C.     The Impact of Defendant's Misleading and Deceptive Advertising

27.     Defendant intended for consumers to rely upon the representations on the LaCroix Product labels, and reasonable consumers did, in fact, so rely. These representations are often the only source of information consumers can use to make decisions concerning whether to buy and use such products.

28.     Consumers lack the ability to test or independently ascertain the genuineness of product claims of normal everyday consumer products, especially at the point-of-sale. Reasonable customers must therefore rely on consumer product companies, such as Defendants, to honestly represent their products and a product attributes on the product labels.

29.     At all relevant times, Defendant directed the above-referenced LaCroix Product labels, statements, claims and innuendo, including that the products were all-natural, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the LaCroix Products.

30.     Plaintiffs and Class Members did reasonably rely on Defendant's LaCroix Product labels, statements, claims and innuendo in deciding to purchase the LaCroix Products and were thereby deceived.

31.     As a result of Defendant's deceptive labeling and/or marketing campaign, Defendant has caused Plaintiffs and putative Class Members to purchase the LaCroix Products,

which are not all-natural. Plaintiffs and putative Class Members have been harmed in the amounts they respectively paid for the Products.

32.     As a result of Defendant's misconduct, Defendant was able to sell the LaCroix Products to hundreds of thousands of consumers in the United States, including to Plaintiffs and putative Class Members in the State of New York, and to realize sizeable profits.

33.     Plaintiffs and putative Class Members were harmed and suffered actual damages in that Plaintiffs and putative Class Members did not receive the benefit of their bargain as purchasers of the LaCroix Products, which were represented as being all-natural, when they are not. Instead, Plaintiffs and putative Class Members are worse off after purchasing the products, as Plaintiffs and putative Class Members paid for products that are not all-natural. Defendant developed and knowingly employed a labeling, advertising and/or marketing strategy designed to deceive consumers into believing that the LaCroix Products are all-natural, when they are not.

34.     The purpose of Defendant's scheme is to stimulate sales and enhance Defendant's profits.

35.     As the manufacturer, advertiser, distributor and seller of the LaCroix Products, Defendant possesses specialized knowledge regarding the products and the content and effects of the ingredients contained therein. In other words, Defendants knew exactly what is – and is not – contained in the products.

36.     Defendant knew or should have known, but failed to disclose to consumers, that the LaCroix Products are not all-natural as labeled and/or marketed by Defendant.

37.     Plaintiffs and putative Class Members were, in fact, misled by Defendant's labeling, representations and marketing of the LaCroix Products.

38.     Plaintiff and Class Members would not have purchased the LaCroix Products, or would have paid less for them, had they known the products were not all-natural.

**PLANTIFFS' EXPERIENCES**

**Plaintiff Adenike Graham**

39.     Plaintiff Adenike Graham is a resident of Cortlandt Manor, Westchester County, New York. Around the end of December 2018, she purchased one twelve-pack of LaCroix Products from Peekskill Stop & Shop store located in Westchester County. In particular, she purchased the Lemon flavor of LaCroix sparkling water. Beyond this occasion, Plaintiff Graham has purchased LaCroix products numerous other times on a regular basis.

40.     Plaintiff Graham began purchasing the LaCroix Products in large part because of their claims of being "all natural" and "100% natural."

41.     Plaintiff Graham read both the packaging of the twelve-pack and on the individual cans of LaCroix Products. She noticed that the packaging of the twelve-pack included the phrase "100% natural," and the individual cans included the phrase "natural."

42.     Plaintiff Graham and her family consumed some of the LaCroix Products based upon their belief that the products were "all natural."

**43.**     Plaintiff Graham discovered that Defendant's claims and representations that the LaCroix Products were "all natural" and "100% natural" were not true. She did not receive the benefit of her bargain.

**Plaintiff Kimberly McNulty**

44.     Plaintiff Kimberly McNulty is a resident of the Bronx, Bronx County, New York. On December 14, 2018, she purchased two twelve-packs of LaCroix Products from the Throggs

Neck Target store located in Bronx County. In particular, she purchased the Cran-Raspberry and Passionfruit flavors of LaCroix sparkling water.

45.     Plaintiff McNulty tries to purchase products that are natural or organic, whenever possible. She purchased the LaCroix Products in large part because of their claims of being "all natural" and "100% natural."

46.     Plaintiff McNulty read both the packaging of the twelve-packs and on the individual cans of LaCroix Products. She noticed that the packaging of the twelve-pack included the phrase "100% natural," and the individual cans included the phrase "natural."

47.     Plaintiff McNulty and her family consumed some of the LaCroix Products based upon their belief that the products were "all natural."

48.     Plaintiff McNulty later discovered through an online article she read that Defendant's claims and representations that the LaCroix Products were "all natural" and "100% natural" were not true. She was upset by these misrepresentations.

49.     Had Plaintiff McNulty been aware of the misrepresentations made by Defendant on and in regards to their LaCroix Products, she would not have purchased the LaCroix Products, or else would have paid significantly less for them. She did not receive the benefit of her bargain.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action against Defendant individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> *During the fullest period allowed by law, all persons residing in the state of New York who purchased the LaCroix Product for their personal use and not for resale.*

51.     Excluded from the Class are (a) any person who purchased the LaCroix Products for resale and not for personal or household use, (b) any person who signed a release of any

Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

52.     Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

53.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

54.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a) and 23(b)(3):** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

    a.  Whether the LaCroix Products are all natural and contain only carbonated water and natural ingredients;

    b.  Whether Defendant's marketing, advertising, packaging, labeling and/or promotional materials for the LaCroix Products are deceptive, unfair, unlawful or misleading to reasonable consumers;

    c.  Whether Defendant's acts, omissions, or misrepresentations of material fact violate New York consumer protection law;

d.  Whether Defendant's breached its contract with consumers with its deceptive and unlawful marketing, advertising, packaging, labeling and/or promotional materials for the LaCroix Products;

e.  Whether Plaintiffs and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

f.  Whether Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members in connection with the LaCroix Products; and

g.  Whether Plaintiffs and putative Class Members are entitled to monetary damages and, if so, the nature of such relief.

55.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Defendant manufactured, marketed, advertised, distributed and sold the LaCroix Products in a deceptive manner, misrepresenting that the product  contained only natural ingredients when, in fact, they do not.

56.     **Typicality – Federal rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the Members of the Class, as each putative Class Member was subject to the same uniform deceptive misrepresentation regarding the purported all natural content of the LaCroix Products. Plaintiffs share the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiffs and all putative Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive misrepresentations regarding the all-natural content of the LaCroix Products.

57. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of the putative Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs do not have any conflicts of interest or interests adverse to those of putative Class.

58. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

59. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

60. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a. The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b.  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.  The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d.  Individual joinder of all putative Class Members is impracticable;

e.  Absent a class action, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendant.

61. In the alternative, the Class may be certified for the following reasons:

a.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

b.  Adjudications of individual Class and Members' claims against Defendant would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.  Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

### FIRST CLAIM FOR RELIEF
### Violations of the Unfair and Deceptive Trade Practices Act
### New York Gen. Bus. Law § 349, *et. seq.*

62.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

63.     Defendant's foregoing deceptive acts and practices, including their omissions, were directed at consumers.

64.     Defendant's foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the LaCroix Products' ingredients.

Defendants omitted material facts regarding the LaCroix Products by failing to disclose that the products contained synthetic ingredients.

65. Rather than disclose this information, Defendant engaged in a widespread, uniform, marketing and advertising campaign that misrepresented the LaCroix Products as having only natural ingredients, when they do not.

66. The LaCroix Products contain synthetic ingredients and are not all natural or 100% natural as represented by Defendant. Defendant did not disclose this information to consumers.

67. Defendant's foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law § 349, in that:

    a. Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the LaCroix Products as being all natural or 100% natural, when they knew, or should have known, that the products contained synthetic ingredients;

    b. Defendant knew the absence of all natural ingredients, and the presence of synthetic ingredients, in the LaCroix Products was unknown to and would not be easily discovered by Plaintiffs and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the products; and

    c. Plaintiffs and Class Members were deceived by Defendant's failure to disclose and could not discover the absence of all natural ingredients, and presence of synthetic ingredients, in the LaCroix Products prior to purchasing the products.

68. Plaintiffs and the Class Members suffered damages when they purchased the LaCroix Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and Class Members who were unaware that the LaCroix Products did not contain all natural ingredients when they purchased the Products.

69. Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

Consumers, including Plaintiffs and Class Members, would not have purchased the LaCroix Products had they known about the absence of all natural ingredients, and the presence of synthetic ingredients, in the products.

70. As a direct and proximate result of Defendant's deceptive acts and practices, including their omissions, Plaintiffs and Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

71. In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Violations of the New York Deceptive Sales Practices Act**
**New York Gen. Bus. Law § 350**

72. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

73. New York General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." The term "false advertising" includes "labeling, of a commodity,…if such advertising is misleading in a material respect." N. Y. Gen. Bus. Law § 350-a(1). In determining whether advertising is misleading, the law takes into account not only representations made by statement, word, design, or any combination thereof, but also the "extent to which the advertising fails to reveal facts material in light of such representations…" N.Y. Gen. Bus. Law § 350-a(1).

74. As more fully set forth above, Defendant's conduct described herein violates New York General Business Law § 350. Defendant, while engaged in conduct of business, trade and commerce, did attempt to directly and/or indirectly induce consumers to purchase the LaCroix

Product by its labeling. In doing so, Defendant utilized false labeling which did not represent the true nature and quality of the LaCroix Product, but rather mislead consumers into believing that the product had an all-natural quality that it did not. The false labeling was materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances.

75.     Defendant's conduct caused and continues to cause injury to consumers, including Plaintiffs and putative Class Members, in that they were misled to believe that they were purchasing an all-natural product, when in fact they were not.

76.     In making and disseminating the false labeling, Defendant knew or should have known that its practices were materially deceptive and misleading. Plaintiffs and putative Class Members based their decision to purchase the LaCroix Products in substantial part on Defendant's labeling, advertisements, material representations and omitted facts. The revenue to Defendant attributable to the sale of the LaCroix Product likely amount to millions of dollars.

77.     Based on all of the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiffs and putative Class Members to sustain injury in fact – the loss of monies paid for the LaCroix Products.

## THIRD CLAIM FOR RELIEF
### Breach of Contract/Common Law Warranty

78.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

79.     To the extent Defendant's commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs pleads in the alternative under common law warranty and contract law.

80.     Plaintiffs and Class Members purchased the LaCroix Products either directly from Defendant or through retailers such as Amazon, Walmart, Target, Walgreens, and local grocery stores, among others.

81.     Defendant expressly warranted that the LaCroix Products were fit for their intended purpose in that the products were formulated with only natural ingredients.

82.     Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiffs, Class Members and Defendant.

83.     Defendant breached the warranties and/or contract obligation by placing the LaCroix Products into the stream of commerce and selling them to consumers, when the products do not contain only natural ingredients or the properties they were represented to possess. Due to the absence of "all natural" ingredients, the LaCroix Products are not fit for their intended use as completely natural products. The absence of all natural ingredients substantially and/or completely impairs the use and value of the LaCroix Products.

84.     The absence of all natural ingredients, and presence of synthetic ingredients, in the LaCroix Products at issue herein existed when the LaCroix Products left Defendant's possession or control and were sold to Plaintiffs and Class Members. The absence of all natural ingredients, and the presence of synthetic ingredients, impaired the use and value of the LaCroix Products and was not discoverable by Plaintiffs and Class Members at the time of their purchase of the products.

85.     As a direct and proximate cause of Defendant's breach of contract, Plaintiffs and Class Members were harmed because they would not have purchased the LaCroix Products if they knew the truth about the ingredients of the LaCroix Products.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**

86.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

87.     Plaintiffs and Class Members conferred a benefit on Defendant when they purchased the LaCroix Products, of which Defendant had knowledge.  By its wrongful acts and omissions described herein, including selling the LaCroix Products, which are not all natural and which contain synthetic ingredients, Defendant was unjustly enriched at the expense of Plaintiffs and Class Members.

88.     Plaintiffs' and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

89.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the LaCroix Products.

90.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the LaCroix Products on the same terms or for the same price had they known that the products were not all natural and contained synthetic ingredients, and were not fit for their intended use.

91.     Defendant either knew or should have known that payments rendered by Plaintiffs and Class Members were given and received with the expectation that the LaCroix Products contained only natural ingredients and not synthetic ingredients, as represented by Defendant in

advertising, on Defendant's websites, and on the LaCroix Product labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

92.    Plaintiffs and Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

93.    When required, Plaintiffs and Class Members are in privity with Defendant because Defendant's sale of the LaCroix Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the LaCroix Products.

94.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against Defendant National Beverage Corp. and accordingly requests the following:

A.    An order declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

B.    An order awarding Plaintiffs and Class Members monetary damages, including statutory damages, to the fullest extent allowable under the law;

C.    An order awarding Plaintiffs and Class Members restitution of the funds that unjustly enriched Defendant at the expense of Plaintiffs and Class Members;

D.    An award of attorneys' fees and costs, as provided by law and/or as would be

reasonable from monies recovered for or benefits bestowed on the Class;

E.      Interest as provided by law, including but not limited to pre-judgment and post-

judgment interest as provided by rule or statute; and,

F.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

DATED:  January 29, 2019.                    Respectfully submitted,

                                             **SIMMONS HANLY CONROY LLC**

                                             */s/ Mitchell M. Breit*

                                             Mitchell M. Breit
                                             **SIMMONS HANLY CONROY LLC**
                                             112 Madison Avenue
                                             New York, New York 10016-7416
                                             Telephone:  (212) 784-6400
                                             Facsimile:  (212) 213-5949
                                             mbreit@simmonsfirm.com

                                             Greg Coleman (*pro hac vice* to follow)
                                             Rachel Soffin (*pro hac vice* to follow)
                                             Lisa A. White (*pro hac vice* to follow)
                                             **GREG COLEMAN LAW PC**
                                             800 S. Gay Street, Suite 1100
                                             Knoxville, Tennessee 37929
                                             Telephone: (865) 247-0080
                                             greg@gregcolemanlaw.com
                                             rachel@gregcolemanlaw.com
                                             lisa@gregcolemanlaw.com

                                             Nick Suciu III (*pro hac vice* to follow)
                                             **BARBAT, MANSOUR & SUCIU PLLC**
                                             1644 Bracken Rd.
                                             Bloomfield Hills, Michigan 48302
                                             Telephone: (313) 303-3472
                                             nicksuciu@bmslawyers.com

                                             Lauren Brusca (*pro hac vice* to follow)

29

**BRUSCA LAW, PLLC**
221 NE Ivanhoe Blvd.
Suite 200
Orlando, FL 32804
Telephone: (407) 501-6564
lauren@brusca-law.com